IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TNT CRANE & RIGGING, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-23-496-SLP ) |
| TOTAL DEMOLITION SERVICES, LLC, | ) ) |
| Defendant. | ) |

**O R D E R**

Before the Court is Plaintiff TNT Crane & Rigging, Inc.'s Motion for Summary Judgment and Brief in Support [Doc. No. 47]. Defendant has filed a Response [Doc. No. 52] and Plaintiff has filed a Reply [Doc. No. 69]. The matter, therefore, is at issue. For the reasons that follow Plaintiff's Motion is GRANTED and Plaintiff is entitled to summary judgment on its claim for breach of contract.

**I.    Introduction**

In September 2022, a crane tipped over onto the side of a building in downtown Oklahoma City. The incident occurred during the course of the removal of a nearly 30,000 pound sign that was attached to the building with metal connectors. When the welder cut the last metal connector, the weight of the sign caused the crane to tip over onto the side of the building.

Plaintiff, TNT Crane & Rigging, Inc. (TNT or Plaintiff), leased the crane to Defendant, Total Demolition Services (Total or Defendant). At issue is TNT's sole claim against Total for breach of contract. TNT alleges that Total breached the parties' contract

by providing the incorrect weight of the sign to TNT and that TNT has suffered damages as a result.

Total denies liability. Total contends that even if a breach of contract occurred, any damages claimed by TNT are not the proximate cause of the breach. Instead, Total argues that the crane operator's refusal to heed warnings about the crane's capacity caused the damages now claimed by TNT.[1]

## II.    Governing Standard

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Koel v. Citizens Med. Ctr., Inc*., No. 23-3232, -- F. 4th --, 2025 WL 582899, at *2 (10th Cir. Feb. 24, 2025) *quoting Ingram v. Muskogee Reg'l Med. Ctr*., 235 F.3d 550, 551 (10th Cir. 2000) *then citing* Fed. R. Civ. P. 56(c)). The court "review[s] the record in the light most favorable to the non-moving parties to determine if there is a genuine issue of material fact, which would require the case to go to trial." *Id*. (citing *Urb. By & Through Urb. v. King*, 43 F.3d 523, 525 (10th Cir. 1994)).

---

[1] Total has alleged counterclaims against TNT for breach of contract and negligence. But Total has not moved for summary judgment on its claims. Currently pending, but not presently before the Court, is TNT's Motion for Sanctions [Doc. No. 74] pursuant to which TNT seeks, as alternative relief, the entry of default judgment and dismissal with prejudice of Total's counterclaims.

### III.  Undisputed Material Facts

TNT and Total entered into a valid contract[2] pursuant to which TNT agreed to move an LED sign (the Sign) from a building in downtown Oklahoma City.  Total's employee, Tom Taylor, represented to TNT that the weight of the Sign was at or below 15,000 pounds.  Under the contract's "Terms and Conditions," industry standard, and the parties' previous dealings, Total was responsible for providing the weight of the Sign to TNT.  In turn, Total asked TNT to determine which crane was needed to remove the Sign.

Contrary to Mr. Taylor's representations, the actual weight of the Sign was 29,700 pounds.  The crane TNT leased to Total had a capacity of only 20,200 pounds.

Twice during the job, the crane operator stopped to confirm with Mr. Taylor the weight of the Sign.  Mr. Taylor reconfirmed the weight as 15,000 pounds both times and never told the crane operator that the Sign weighed more than 15,000 pounds.  Mr. Taylor did offer to get another crane on the jobsite, but remained confident in his calculation of the weight of the Sign as 15,000 pounds.[3]

The Sign was attached to the building by twenty-one metal connectors.  These metal connectors were disconnected during the job by Total's welder.  When Total's welder made the last cut, the Sign was dislocated, and the crane tipped over onto the side of the building (the Incident).

---

[2] *See* Doc. Nos. 47-1 and 47-2.

[3] Mr. Taylor testified that at no point during the job was he "ever concerned that the weight [h]e had calculated might have been inaccurate." *See* Taylor Dep. [Doc. No. 69-1] at 44:24-45:3.

The crane was equipped with a load measuring device referred to as a "Load Movement Indicator" (LMI). Prior to the welder's last cut, the LMI went from 17,600 pounds to 19,000 pounds. The LMI was equipped with warning buzzers which sounded prior to the last cut.

Under the parties' Terms and Conditions, Total acknowledged, and TNT agreed, that (1) TNT made no warranties or representations regarding the ability of the crane's LMI to accurately or consistently measure the weight of loads being lifted; (2) that the LMI was to be used as an operator-aid only; and (3) that if Total relied on the LMI, it did so completely at its own risk.[4]

The parties' experts dispute whether the crane operator could (or should) have known the actual weight of the Sign prior to the final cut being made. But it is undisputed that he did not know the actual weight of the Sign throughout the course of the Incident and that Mr. Taylor continued to represent that the Sign weighed 15,000 pounds.

## IV.  Discussion

In this diversity action, the Court applies the substantive law of the forum state. *New Hampshire Ins. Co. v. TSG Ski & Golf, LLC*, -- F.4th -- No. 23-1248, 2025 WL 583022

---

[4] Total admits that this is a provision of the parties' Terms and Conditions but, relying on the opinion of its expert witness, Dr. Jahan Rasty, Total claims the Terms and Conditions are "invalid" and "in direct violation of the U.S. Code of Federal Regulations." Resp. at 2, ¶ 9. This appears to be a legal conclusion guised as an expert opinion. And Total does not otherwise address this issue in its Response. Consequently, as discussed infra, Total has failed to adequately address any alleged invalidity of the Terms and Conditions.

at * 4 (10th Cir. Feb. 24, 2025). Here, the parties agree that Oklahoma contract law governs the analysis.[5]

### A. TNT's Damages Were Proximately Caused by Total's Breach of Contract

The elements of a breach of contract claim under Oklahoma law are: (1) the formation of a contract; (2) a breach of that contract; and (3) actual damages resulting from that breach. *See, e.g.*, *Digital Design Grp., Inc. v. Info. Builders, Inc*., 24 P.3d 834, 844 (Okla. 2001). The first two elements of TNT's breach of contract claim are not in dispute. The factual record shows that TNT and Total entered into an agreement to move the Sign from a building in downtown Oklahoma City. Pursuant to the agreement, Total was responsible for providing the weight of the Sign to TNT.[6] Total breached the agreement by providing TNT the wrong weight of the Sign. Although Total conclusorily "denies that it breached the contract," *see* Resp. at 6, it provides no support for this denial.

Total also purports to challenge the validity of the contract. *See* Resp. at 2, ¶ 7 (["T]he contract is invalid as it is in direct violation of the U.S. Code of Federal Regulations."). *See id*. at 2, ¶ 7. In support, Total cites the report of its expert witness, Dr. Jahan Rasty. But Total provides no legal analysis in support of this statement and otherwise does not assert the invalidity of the contract as a basis to avoid the grant of summary

---

[5] In addition to relying exclusively on Oklahoma law in their summary judgment briefing submissions, the parties' Pretrial Report [Doc. No. 73] acknowledges that "substantive Oklahoma contract law applies." *Id*. at 4, n. 1.

[6] Total acknowledges in its Response that TNT has "accurately state[d] the terms of the contract[.]" *See* Resp. at 2, ¶ 7.

judgment in favor of TNT. Accordingly, the Court finds the issue is not properly raised. *See United States v. Moya*, 5 F.4th 1168, 1192 (10th Cir. 2021) (recognizing that litigants waive arguments when they are "inadequately presented"); *see also Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that a court has no obligation to perform legal research or construct arguments for parties); *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1513 (10th Cir. 1990) (the court "need not sift through the record to find (evidence to support a party's argument), nor manufacture a party's argument for it").[7]

The sole focus of Total's response is the third element and, specifically, whether the damages claimed by TNT are recoverable as the "natural and proximate consequence of the breach of contract[.]" *Fowler v. Lincoln Cnty. Conservation Dist.*, 15 P.3d 502, 507 (Okla. 2000) (citation omitted); *see also* Okla. Stat. tit. 23, § 21 (providing that the measure of damages for breach of contract "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."). Although it is undisputed that Plaintiff incurred damages, the parties' dispute centers upon: (1) whether the damages were foreseeable at the time of contracting and proximately caused by the breach of contract; and (2) whether TNT has submitted sufficient evidence to support the amount of damages claimed.

---

[7] Notably, Total brings a breach of contract counterclaim against TNT, the viability of which would appear to depend on the existence of a valid contract between the parties.

To defeat summary judgment, Total invokes a doctrine from tort law and argues that the crane operator was negligent and that his negligence is a supervening cause that breaks the causal chain between Total's fault and the harm suffered by Plaintiff. The Court assumes, without deciding, that the supervening-cause doctrine applies in the context of contract analysis. *See, e.g., Webco Indus., Inc. v. Diamond*, No. 11-CV-774-JHP-FHM, 2012 WL 5995740 at *7 (N.D. Okla. Nov. 30, 2012) (recognizing that "the principles of legal causation sometimes receive labels in contract analysis different from the "proximate causation" label most frequently employed in tort analysis," but that "these principles nevertheless exist to restrict liability in contract as well" and under Oklahoma law "proximate cause may be defeated by an intervening cause that breaks the causal chain between the party at fault and the plaintiff's harm").[8]  Even so, the Court finds the undisputed factual record does not support finding the crane operator's conduct is a supervening cause.

The original conduct at issue is Total's faulty determination (and repeated inaccurate representations) that the Sign weighed 15,000 pounds.  The alleged intervening act is the crane operator's conduct in the course of removing the Sign.  Specifically, Total points to the crane operator's decision to remove the Sign even though the crane's LMI displayed

---

[8] As discussed in *Webco*, Oklahoma follows the general rule summarized in Restatement (Second) of Contracts § 351 Comment A (1970) to determine if damage is the natural and proximate consequence of a breach of contract. *Id*. at *6-7.  To this end, "[a] contracting party is generally expected to take account of those risks that are foreseeable at the time he makes the contract" and "[i]t is enough . . . that the loss was foreseeable as a probable, as distinguished from a necessary, result of his breach. *Id*.

7

the weight of the Sign as in excess of 15,000 pounds and the crane sounded warning signals which gave the crane operator concern that the Sign weighed more than 15,000 pounds.[9]

Under Oklahoma law, "[f]or an intervenor's act to become a 'supervening cause' and cut off the possible liability of the original negligence, it must (1) be independent of the primary negligence, (2) be adequate of *itself* to bring about the injury complained of and (3) not be a reasonably foreseeable event." *Lockhart v. Loosen*, 943 P.2d 1074, 1079 (Okla. 1997) (emphasis in original) (addressing supervening cause in the context of a negligence claim). Here, however, the Court finds the crane operator's conduct is not independent of the original negligence. "An act is independent when it is not logically compelled by, and does not naturally flow from, the original carelessness." *Liddington v. Burns*, 916 F. Supp. 1127, 1139 (W.D. Okla. 1995) (applying Oklahoma law). The crane operator relied on both the original representation from Total that the Sign weighed 15,000 pounds and Total's continued representations as to that weight during the course of the job. Any conduct of the crane operator naturally flowed from that negligent representation. Contrary to Total's assertion, the incident did not "*only*" occur because the crane operator moved forward with the lift despite the warnings inside the crane. Resp. at 7 (emphasis added).

---

[9] Total attempts to equate the crane operator's concern that the Sign weighed more than 15,000 pounds, *see* Wallin Dep. [Doc. No. 52-2] at 33:1-5, with a concern that the lift exceeded the crane's capacity. But the crane operator gave no such testimony and such a distinction is beyond the realm of a reasonable inference drawn in favor of Total as the nonmoving party. To the contrary, the crane operator further testified that Mr. Taylor told him that when there was only "half a clip left to cut", the crane operator "had to have all the weight because, as much clip they had left, there's no way that it would hold all that weight basically." *Id*. at 33:24-34:2. In other words, Mr. Taylor was communicating to the crane operator that prior to the final cut, the crane was essentially holding the entire weight of the Sign.

Additionally, the Incident was a reasonably foreseeable event. It was reasonably foreseeable that a miscalculation as to the weight of the Sign could contribute to the inability of the crane to withstand the weight of the Sign thus resulting in the Incident. When, as here, "the intervening act is *a reasonably foreseeable consequence* of the primary negligence, the original wrongdoer will not be relieved of liability." *Lockhart,* 943 P.2d at 1079. (emphasis in original). Under these circumstances, Total's negligence in determining the weight of the Sign is a proximate cause of the Incident. *Id.* ("[W]here the primary act of negligence is not superseded by a second cause – i.e, continues to operate concurrently, so that damage is the result of both causes acting in concert – each act may be regarded as the proximate cause[.]").

On the undisputed factual record, the Court finds TNT's damages as a result of Total's breach of contract were foreseeable. *See Keel v. Titan Constr. Corp*., 639 P.2d 1228, 1232 (Okla. 1981) (recognizing that forseeableness is a question of law for the court when only "one reasonable conclusion can be drawn from the facts"). And, as set forth, Total does not dispute the other elements of a breach of contract claim, which the Court finds are supported by the record. Accordingly, the Court finds TNT is entitled to summary judgment on its breach of contract claim.

    **B.**    **The Amount of Damages Claimed by TNT Is Supported by the Record**

As to the amount of damages proximately caused by Total's breach, TNT seeks to recover the following itemized damages: (1) payment remaining due under the original invoice for the crane services provided to Total ($3,734.40); (2) recovery of the crane and cleanup of the surrounding areas ($16,311.91); (3) labor expenses for work done during

the recovery of the crane ($29,738.69); (4) the costs of rebuilding the crane ($55,254.48); and (5) loss of use of the crane during the recovery and rebuild process ($85,672.10). These damages total $190,711.58. TNT asserts these damages represent the detriment proximately caused by Total's breach of contract. *See* Okla. Stat. tit. 23, § 21.

In support, TNT submits the Affidavit of its Director of Risk Management, Cyndi Featherston. *See* Featherston Aff. [Doc. No. 47-7]. She states that the facts contained in her Affidavit are based on her "personal knowledge" and a "review of records kept in the ordinary course of business by TNT." *Id.*, ¶ 2.[10] Ms. Featherston also states that she has "reviewed and [is] familiar with the expenses incurred by TNT during and following the September 24, 2022, crane tip over in downtown Oklahoma City[.]" *Id.*, ¶ 3. Additionally, attached to her Affidavit are invoices supporting the itemized damages requested. *See id.*, ¶¶ 4-10 (citing Exhibits A-G). Ms. Featherston also explains how damages for loss of use of the crane were determined and calculated. *Id.*, ¶ 11.

In response, Total admits that it has failed to remit payment under the original invoice for the crane services provided. *See* Resp. at 3, ¶16-17. As to TNT's remaining items of damages, Total denies the amounts alleged and states that TNT's "self-serving affidavit" is insufficient. *Id.*, ¶¶ 18-21. Total offers no legal argument to refute TNT's requested damages.

---

[10] Generally, documents prepared in the normal course of business are admissible to prove the matters asserted therein. *See* Fed.R.Evid. 803(6).

Upon review, the Court finds the itemized damages sought by TNT are recoverable pursuant to Okla. Stat. tit. 23, § 21 as damages proximately caused by Total's breach of the parties' contract.[11] Those damages are "clearly ascertainable in both their nature and origin" and "in some manner other than by mere speculation, conjecture or surmise, and by reference to some definite standard." *Bass Tr. of Andy Bass Fam. Tr. v. Tour 18 at Rose Creek, LP*, 795 F. App'x 613, 624 (10th Cir. 2020) (applying Oklahoma law) (citations omitted). The Court further finds Ms. Featherston's Affidavit and the supporting invoices constitute adequate evidentiary support for those damages. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit . . . used to support . . . a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.").[12]

---

[11] To the extent the negligence of the crane operator may have contributed to TNT's damages, "under Oklahoma law there is no reduction of damages for a breach of contract claim in light of a party's contributory negligence." *Sundance Energy Okla., LLC v. Dan D. Drilling Corp.*, 836 F.3d 1271, 1278 (10th Cir. 2016).

[12] Total claims the Affidavit is "self-serving," but wholly fails to demonstrate that the Affidavit does not meet the criteria set forth in Rule 56(c)(4). Additionally Total has failed to refute the evidence in responding to TNT's Motion. *See* Fed. R. Civ. P. 56(c)(2) ("A party asserting that a fact is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that . . . an adverse party cannot produce admissible evidence to support the fact.").

### C. TNT Has Inadequately Addressed Its Entitlement to Attorney's Fees and Costs

As a final matter, TNT asserts, without legal analysis, that it is entitled to recover attorney's fees and expenses pursuant to the parties' contract. *See* Mot. at 4, ¶ 22.[13] In support, TNT cites paragraph 12 of the parties' Terms and Conditions. Paragraph 12 states, in part:

> Lessee shall be liable to Lessor or [sic] all of Lessor's attorneys' fees and other expenses in connection with exercising any of its rights under this agreement, including cost to demobilize the Work and any cost incurred in connection with taking possession of the Equipment and repairing and restoring the Equipment to the condition in which it was leased.

*See* Doc. No. 47-2 at 3, ¶ 12. TNT argues the actual amount of fees and expenses to be awarded should be determined by the Court "upon application to be filed by TNT." *Id*. at 8. In response, Total states only that TNT "has failed to establish that it is legally entitled to attorney fees." Resp. at 3, ¶ 22.

TNT's citation to a provision of the parties' Terms and Conditions, without analysis or discussion, is insufficient to adequately apprise the Court of the legal and factual basis for TNT's entitlement, if any, to attorney's fees and expenses. Accordingly, the Court declines to address the issue at this time. *See* citations supra at page 6 (addressing inadequately raised issues).

---

[13] TNT incorrectly characterizes as an undisputed "fact" what is more appropriately characterized as a legal conclusion – that is, that "Total is liable to TNT for its attorneys' fees and other expenses . . . ."

## V.     Conclusion

IT IS THEREFORE ORDERED that Plaintiff TNT Crane & Rigging, Inc.'s Motion for Summary Judgment and Brief in Support [Doc. No. 47] is GRANTED as to Plaintiff's breach of contract claim and Plaintiff is entitled to an award of damages in the principal amount of $190,711.58.

IT IS SO ORDERED this 10th day of March, 2025.

_____
SCOTT L. PALK
UNITED STATES DISTRICT JUDGE